

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG/AL
F.#2010R00153

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

October 5, 2012

<u>By Hand Delivery and ECF</u>

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>      Re:  <u>United States v. Richard Fusco</u>
>           <u>Criminal Docket No. 11-30 (KAM)</u>

Dear Judge Matsumoto:

     The government respectfully submits this letter in anticipation of sentencing in the above-captioned case, which is scheduled for October 31, 2012.  For the reasons set forth below, the government respectfully asks the Court to craft a sentence that is sufficient to serve the goals set forth in 18 U.S.C. § 3553(a)(1) and 3553(a)(2) and, in particular, a sentence that specifically reflects the "the history and characteristics of the defendant," "promote[s] respect for the law," "provide[s] just punishment for the offense" and "afford[s] adequate deterrence to criminal conduct."

I.   <u>Background</u>

     On January 12, 2011, a grand jury in the Eastern District of New York returned an indictment charging the defendant and thirty-eight others with a variety of offenses, including racketeering conspiracy, based on their leadership of, membership in and association with the Colombo organized crime family of La Cosa Nostra (the "Colombo family" and "LCN," respectively).  (Docket Entry No. 1.)

     The defendant was charged in Count Forty-one of the indictment with extortion conspiracy, in violation of 18 U.S.C. § 1951(a).  (<u>Id.</u> ¶ 233.)  On January 20, 2011, the indictment was unsealed and the defendant was arrested.  (Docket Entries Nos. 2, 91.)  On September 29, 2011, the defendant pled guilty to Count

Forty-one, pursuant to a plea agreement, before the Honorable Ramon E. Reyes, Jr.  (Docket Entry No. 558.)

II.  Discussion

The government respectfully submits that the Court should craft a sentence that specifically reflects the "the history and characteristics of the defendant," "promote[s] respect for the law," "provide[s] just punishment for the offense" and "afford[s] adequate deterrence to criminal conduct."

A.   Legal Standard

The Sentencing Guidelines are advisory, not mandatory.  United States v. Booker, 543 U.S. 220, 258-60 (2005).  However, the Supreme Court held in Booker that sentencing courts must consider the Guidelines in formulating an appropriate sentence.  Id.  In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted).  Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [a district court] may not presume that the Guidelines range is reasonable.  [A district court] must make an individualized assessment based on the facts presented."  Id. at 49-50 (citation and footnote omitted).

B.   The Guidelines Range Is 18 to 24 Months

The Probation Department has determined that the total offense level is 16, that the defendant is in Criminal History Category II, and that the advisory Guidelines range of imprisonment is therefore 24 to 30 months.  (Presentence Investigation Report ("PSR") ¶¶ 21-40, 78.)

The government agrees with this determination, except that the government is prepared to move for an additional two-level reduction, pursuant to U.S.S.G. §5K2.0, based on a global disposition.  Therefore, the government submits that the total

offense level is 14 and the advisory Guidelines range of imprisonment is 18 to 24 months.

### C. No Downward Departures Are Warranted

The defendant moves for downward departures based on a variety of circumstances.  While some of those circumstances merit consideration under 18 U.S.C. § 3553(a), no departures are warranted under the Guidelines.

#### 1. Legal Standard

The defendant bears the burden of proving that he is entitled to a downward departure under the Guidelines.  United States v. Cotto, 347 F.3d 441, 445 (2d Cir. 2003).  He must do so by a preponderance of the evidence.  United States v. Robertson, 09 CR 87 (JMC), 2011 WL 5353071, at *4 (D. Vt. Oct. 4, 2011) (citing United States v. Valdez, 426 F.3d 178, 184 (2d Cir. 2005)); United States v. Volpe, 78 F. Supp. 2d 76, 89 (E.D.N.Y. 1999) (citing United States v. Anders, 956 F.2d 907, 911 (9th Cir. 1992)).

#### 2. Discussion

First, the defendant moves for a departure based on his physical condition, which includes kidney failure, ongoing dialysis and heart conditions.  (Def.'s Stg. Mem. (Docket Entry No. 918) at 1; Ltr. from Dr. Melvin B. Weiss (Docket Entry No. 961) at 1-2.)  A departure based on physical condition applies only when there is "[a]n extraordinary physical impairment."  U.S.S.G. § 5H1.4.  For example, the Guidelines provide that "in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."  Id.  "To qualify, [physical impairments] typically must be impairments that the prison system is unable to accommodate."  United State v. Troche, 01 CR 274 (RWS), 2003 WL 223468, at *2 (S.D.N.Y. Jan. 21, 2003) (citing United States v. Altman, 48 F.3d 96 (2d Cir. 1995)).  The defendant has simply not met his burden of showing that the prison system is unable to accommodate his physical conditions, and this departure is therefore not warranted.  In addition, in United States v. Rioux, 97 F.3d 648, 662-63 (2d Cir. 1996), which the defendant cites as support for a departure on the basis of physical condition, the Second Circuit merely held that "[i]t was not an abuse of discretion for the district court to conclude that, in combination, [the defendant's] medical condition and charitable and civic good deeds warranted a downward departure," but the Circuit did not hold that some

particular medical condition inherently warrants a departure, especially when divorced from charitable and civic good deeds.

Second, the defendant moves for a departure based on his alleged depression and early onset Alzheimer's disease. (Def.'s Stg. Mem. at 1-2.) A departure based on mental or emotional condition is available only when "such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3. Significantly, this departure has a causation requirement, i.e., the mental or emotional condition must have contributed to the defendant's commission of the offense. United States v. Brady, 417 F.3d 326, 334 (2d Cir. 2005).[1] The defendant cannot show any causal link between his alleged mental and emotional conditions and the crime he has committed.

Third, the defendant moves for a departure based on his being 76 years old. (Def.'s Stg. Mem. at 2.) The applicable Guideline provides that:

> Age (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.

U.S.S.G. § 5H1.1. The government respectfully submits that the defendant's age is not unusual, even in combination with his other characteristics, and, in any event, the defendant has not satisfied his burden of showing that another form of punishment is equally efficient as and less costly than incarceration.

---

[1] In 2010, the Sentencing Commission revised this Guideline to authorize departures based on the "unusual degree" standard set forth above, whereas it has previously authorized departures only in "extraordinary" cases. Compare U.S.S.G. § 5H1.3 (amended 2010) and U.S.S.G. § 5H1.3 (amended 2004). However, there is no reason to believe that this amendment affected the causation requirement set forth in cases decided prior to the amendment.

Fourth, the defendant moves for a departure based on his military service. (Def.'s Stg. Mem. at 2.) The Guidelines provide that "[m]ilitary service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.11. Because, until 2010, this Guideline required "extraordinary" service, there is a dearth of case law interpreting the "unusual degree" standard. Compare U.S.S.G. § 5H1.11 (amended 2010) and U.S.S.G. § 5H1.11 (amended 2004). However, the government respectfully submits that, although the defendant's military service is praiseworthy, the defendant has not shown anything "unusual" about his military service that would justify a departure.

Fifth and finally, the defendant moves for a departure based on his argument that the conduct underlying his conviction is outside the "heartland" of the Guidelines. (Def.'s Stg. Mem. at 2, 16-18; see also Def.'s Ltr. to Probation Department dated August 31, 2012.[2]) That argument cannot be taken seriously. As the Second Circuit has explained:

> The imposition of a sentence outside the applicable Guideline range pursuant to § 5K2.0 is appropriate where certain aspects of the case are found unusual enough for it to fall outside the heartland of cases within that Guideline. If the District Court relies on a factor that is not unusual under the circumstances presented, then the decision may be overturned.

United States v. Thorn, 446 F.3d 378, 391 (2d Cir. 2006) (citation, quotation marks and brackets removed). This case presents no unusual aspects. The defendant has been convicted of extortion conspiracy. His conduct consisted of agreeing with other high-ranking members of the Colombo family to extort members and associates of the Gambino crime family in order to pay for medical expenses incurred by a Colombo family associate who had been stabbed by a Gambino family associate. (PSR ¶¶ 8-9.) In particular, the conspirators agreed that in exchange for their promise not to retaliate, they would require the Gambino

---

[2] To the extent the defendant objects to the Probation Department's description of the crime of conviction, the government opposed his objection for the reasons set forth in this letter.

-5-

family to pay $150,000.  (Id. ¶¶ 13, 15.)  The defendant himself has admitted that:

> At or before the June 2010 meeting [among high-ranking members of the Colombo family], I learned that the persons from my group who met with the other group may have implied a threat of bodily injury to the stabber, if the requested compensation for the stabbing victim was not provided.  I allowed this implied threat to stand and did nothing to dispel it.

(Id. ¶ 20; see also Transcript of Guilty Plea at 21-22.)  Given these facts and admissions, the defendant cannot possibly argue that his conduct -- participating in a criminal enterprise's conspiracy to extort a rival criminal enterprise -- is in any respect outside the heartland of the Guidelines.

### C. The Sentence Must Reflect the History and Characteristics of the Defendant, Promote Respect for the Law, Provide Just Punishment and Afford Adequate Deterrence

Based on the factors set forth in 18 U.S.C. § 3553(a), the government urges that Court to craft a sentence that specifically reflects the "the history and characteristics of the defendant," "promote[s] respect for the law," "provide[s] just punishment for the offense" and "afford[s] adequate deterrence to criminal conduct."

#### 1. The Natures and Circumstances of the Offense

The defendant has been convicted of extortion conspiracy.  As noted above, the defendant and other high-ranking members of the Colombo family agreed to extort $150,000 from members and associates of the Gambino crime family.  This is a serious crime that warrants a serious punishment.  18 U.S.C. § 3553(a)(1).  This is especially true because the crime was committed under the auspices of organized crime.  The Colombo family is a dangerous criminal enterprise that uses violence, including murder, to further its interests.  (PSR ¶¶ 5-7.)  The very nature of one crime family conspiring to extort another crime family could easily have led to violence.

#### 2. The Defendant's History and Characteristics

The defendant's history and characteristics show that he is committed to a life of crime.  18 U.S.C. § 3553(a)(1).

As a preliminary matter, the defendant was a member of the Colombo family administration, the three-man body responsible for administering the affairs of the Colombo family, a position he held between approximately 2008 and his arrest in January 2011. Specifically, Fusco served as the consigliere, or counselor, of the Colombo family. (PSR ¶¶ 3, 8.) In his capacity as an administration member, Fusco attended numerous meetings with other high-ranking members of the Colombo family – and other organized crime families – and sponsored associates to become new members of the Colombo family. These facts are, in themselves, serious factors for sentencing.

In addition, his history includes two prior convictions. Most recently, in 1997, the defendant was sentenced to a 168-month term of imprisonment based on his conviction for racketeering conspiracy. (Id. ¶¶ 36-37.) In that case, he was held accountable for all of the murders, murder attempts and murder conspiracies that took place during the "Colombo family war," a violent struggle between two factions for control of the Colombo family, and which culminated in the 1993 murder of Joseph Scopo (charged in the present case against Anthony Russo). (Id. ¶ 37.) Notably, the defendant carried a firearm during this period, and he "actively participated in the stalking" of Scopo. (Id.) This conviction, and the facts underlying it, demonstrate the defendant's unwavering commitment to committing crime within the Colombo family and to participating in violence -- including murder -- in order to maintain control of the Colombo family.

In addition, in 1979, the defendant was sentenced to a two-and-a-half-year term of imprisonment based on his conviction for securities fraud, and he was arrested for bookmaking in 1965 and 1967. (Id. ¶¶ 33-34, 41-44.) These facts demonstrate that committing crime has always been a way of life for the defendant. Although some of this criminal history is remote in time, it is part of the defendant's history and characteristics, and should be taken into account. Indeed, as discussed above, the defendant has asked the Court to take account of his military service, which ended in 1962. (PSR ¶ 50.)

The defendant argues that a lenient sentence is warranted based on his "myriad of health problems and extremely limited life expectancy." (Def.'s Stg. Mem. at, inter alia, 16.) Significantly, the defendant's alleged health problems did not prevent him from committing crimes or assuming a high-ranking position in the Colombo family, all in the very recent past. Therefore, crafting a sentence that places undue reliance on Fusco's ailing health would thwart the other purposes of

sentencing, such as reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, and providing deterrence. Each of these factors, discussed below, is important in this case. Furthermore, given the defendant's position as consigliere of the Colombo family, his health would not prevent him from committing more crimes in the future -- as his history and characteristics make clear he will -- because he can direct others to carry out crimes.

### 3. Reflecting the Seriousness of the Offense, Promoting Respect for the Law and Providing Just Punishment

The sentence must reflect the seriousness of the offense, promote respect for the law and provide just punishment. 18 U.S.C. § 3553(a)(2)(A). As noted above, the defendant's offense is serious and carried a high risk of violence. In addition, by engaging in a life of crime under the auspices of the Colombo family, including by participating in the Colombo family war, the defendant has demonstrated that he has no respect for the law.

### 4. Affording Deterrence and Protecting the Public

The sentence must afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B) and (C). "Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." United States v. Davis, No. 08-CR-332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29, 2010). The defendant's prior arrests and convictions did not serve the purpose of specific deterrence -- nor did his prior 168-months sentence -- and his ongoing membership in the Colombo family, and his position of leadership within the Colombo family, demonstrates that the defendant lacks respect for the law. In sum, a lenient sentence would not sufficiently deter either the defendant or others who, like the defendant, are in a position to choose between a law-abiding life and a life of crime.

### C. A Fine Within the Guidelines Range Is Warranted

The government also asks the Court to impose a fine. Section 5E1.2(a) of the Guidelines provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." In this case, the defendant has not established such an inability to the Probation Department (PSR ¶ 76), and has not otherwise sustained his burden of showing such


an inability, United States v. Tocco, 135 F.3d 116, 133 (2d Cir. 1998) (defendant bears this burden).  Therefore, it is now appropriate that he "reimburse society for the drain on economic resources caused by [his] li[fe] of crime and for the high costs of [his] own necessary imprisonment," United States v. Sessa, 821 F. Supp. 870, 875 (E.D.N.Y. 1993) (Weinstein, J.), by paying a fine within the advisory Guideline range of $4,000 to $40,000, U.S.S.G. § 5E1.2(c)(3).

III. Conclusion

In this case, given all of the facts and circumstance discussed above, the government respectfully submits that the Court should impose (1) a sentence that specifically reflects the "the history and characteristics of the defendant," "promote[s] respect for the law," "provide[s] just punishment for the offense" and "afford[s] adequate deterrence to criminal conduct" and (2) a fine within the advisory Guidelines range of $4,000 and $40,000.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:      /s/
Elizabeth A. Geddes
Allon Lifshitz
Gina M. Parlovecchio
Assistant U.S. Attorneys
(718) 254-6430/6164/6228

cc: Clerk of the Court (KAM) (by ECF)
    Martin B. Adelman, Esq. (by ECF)
    Darcy A. Zavatsky, Senior U.S. Probation Officer (by email)